**NOT FOR PUBLICATION**

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| ERIC CRUZ, | : | Civil Action No.:10-5605 (SDW) |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | **O P I N I O N** |
| | : | |
| JOHN MAIN, et al., | : | |
| | : | |
| Defendants. | : | |

**APPEARANCES:**

ERIC CRUZ, Pro Se
# 14
AD. SEG. UNIT - STU
EAST JERSEY STATE PRISON
8 PRODUCTION WAY, CN - 905
AVENEL, NJ 07001

**WIGENTON**, District Judge

Plaintiff, Eric Cruz, involuntarily committed pursuant to the Sexually Violent Predator Act ("SVPA"), N.J.S.A. 30:4-27.24, et seq., seeks to bring this action in forma pauperis ("IFP"). Based on his affidavit of indigence, the Court will grant Plaintiff's application to proceed IFP, pursuant to 28 U.S.C. § 1915(a), and order the Clerk of the Court to file the complaint.

At this time, the Court must review the complaint pursuant to 28 U.S.C. § 1915(e)(2), to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary

relief from a defendant who is immune from such relief.  For the reasons set forth below, the Court concludes that the complaint should be dismissed without prejudice at this time.

## BACKGROUND

Plaintiff alleges that on May 12, 2010, he was transferred to the East Jersey State Prison ("EJSP"), Administrative Segregation Unit ("Ad Seg"), Special Treatment Unit ("STU").[1]

---

[1]  This Court notes that the transfer of residents at a Kearny facility has been the subject of newspaper articles and a recent application for injunctive relief in a pending civil case in this District Court, Alves, et al. v. Ferguson, et al., Civil Action No. 01-cv-0789 (DMC)(MF) (Consolidated).  This Court refers to the Opinion issued by the Honorable Dennis M. Cavanaugh, U.S.D.J., in the Alves case, on March 29, 2010, in which Cavanaugh denied injunctive relief. ( See Docket entry no. 115). In Alves, the residents moved to have the Court order that (a) the resident population at the Annex (another NJDOC facility in New Jersey) not be increased without leave of Court; and (b) the State of New Jersey must provide residents' counsel with at least 30 days notice of any proposed transfer to allow the residents an opportunity to seek Court intervention, if necessary.  Specifically, for purposes of factual background in this action, Judge Cavanaugh noted that, "[p]ursuant to County of Hudson v. State of New Jersey, the State of New Jersey is required to turn over the premises of the [Kearny] facility to the County of Hudson by May 19, 2010.  Accordingly, the State must locate another temporary or permanent facility to house the SVPs currently living there." (March 29, 2010 Opinion, Docket entry No. 115, at pg. 2, citation omitted).  Judge Cavanaugh further noted that a February 3, 2010 newspaper article had reported that the residents of the Kearny facility were to be relocated to the Special Treatment Unit "Annex" in Avenel, New Jersey, located on or near the grounds of the East Jersey State Prison.  However, by the time the briefing on the residents' motion was completed, it had been confirmed that another location had been selected, namely, the administrative segregation unit in East Jersey State Prison itself. (March 29, 2010 Opinion, Docket entry No. 115, at pg. 4).

Plaintiff asserts that since he has arrived at EJSP, he is "forbidden to participate in treatment/therapy," which "eliminat[es] [his] chances of being released." (Complt., ¶ 4). In particular, he says that group sessions were cancelled. (Complt., ¶ 4(g)).

Further, he complains that the conditions of the facility are unconstitutional, including "leaky ceilings, bugs, bed bugs, water that causes rash like symptoms . . . . also cold units, cold water . . . ." (Complt., ¶ 4(d)). Specifically, Plaintiff contends that shower doors were removed, recreation time was cancelled, his job and privileges could be taken away if he does not attend groups, and that psychiatric staff moved their offices to Edison leaving Plaintiff "in full custody of the DOC having no on-site psychiatrists or psychologists to mainly talk to." Plaintiff asserts that on October 22, 2010, he was in lock down for four hours and personal property was confiscated. (Complt., ¶ 6).

Plaintiff argues that his transfer to a prison facility violated his constitutional rights since he is civilly committed, and he should not be subjected to the prison policies, rules and regulations. (Complt., ¶ 4(f)). He contends that his personal property was confiscated during a "shake down" in the Ad Seg unit. (Complt., ¶ 4(g)).

For relief, Plaintiff asks that he be "transferred to a federally funded facility with the possibility of going back to society."  He also seeks an unspecified amount in compensatory damages for the mental anguish and stress that he is suffering in being transferred to a prison facility. (Compl., ¶ 7).

## DISCUSSION

### A.   STANDARDS FOR A SUA SPONTE DISMISSAL

A district court is required to review a complaint in a civil action where the litigant is proceeding IFP.  Specifically, the court is required to identify cognizable claims and to sua sponte dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief, pursuant to 28 U.S.C. § 1915(e)(2)(B).  Accordingly, because Plaintiff is proceeding IFP in this matter, this action is subject to sua sponte screening for dismissal.

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007) (following Estelle v. Gamble, 429 U.S. 97, 106 (1976) and Haines v. Kerner, 404 U.S. 519, 520-21 (1972)).  See also United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).

Recently, the Supreme Court revised the standard for summary dismissal of a complaint that fails to state a claim.  In

4

<u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937 (2009), the Supreme Court examined Rule 8(a)(2) of the Federal Rules of Civil Procedure which provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Citing its recent opinion in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), for the proposition that "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" <u>Iqbal</u>, 129 S. Ct. at 1949 (quoting <u>Twombly</u>, 550 U.S. at 555), the Supreme Court identified two working principles underlying the failure to state a claim standard:

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice ....  Rule 8 ... does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.  Second, only a complaint that states a plausible claim for relief survives a motion to dismiss.  Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"-"that the pleader is entitled to relief."

<u>Iqbal</u>, 129 S. Ct. at 1949-1950 (internal citations omitted).

The Court further explained:

> [A] court considering a motion to dismiss can choose to
> begin by identifying pleadings that, because they are
> no more than conclusions, are not entitled to the
> assumption of truth.  While legal conclusions can
> provide the framework of a complaint, they must be
> supported by factual allegations.  When there are
> well-pleaded factual allegations, a court should assume
> their veracity and then determine whether they
> plausibly give rise to an entitlement to relief.

Iqbal, 129 S. Ct. at 1950.

Thus, to prevent a summary dismissal, civil complaints must now allege "sufficient factual matter" to show that a claim is facially plausible.  This then "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. at 1948; see also Twombly, 505 U.S. at 555, & n.3; Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).

The Third Circuit now requires that a district court must conduct the two-part analysis set forth in Iqbal when presented with a motion to dismiss:

> First, the factual and legal elements of a claim should
> be separated.  The District Court must accept all of
> the complaint's well-pleaded facts as true, but may
> disregard any legal conclusions.  [Iqbal, 129 S. Ct. at
> 1949-50].  Second, a District Court must then determine
> whether the facts alleged in the complaint are
> sufficient to show that the plaintiff has a "plausible
> claim for relief." [Id.]  In other words, a complaint
> must do more than allege the plaintiff's entitlement to
> relief.  A complaint has to "show" such an entitlement
> with its facts.  See Phillips, 515 F.3d at 234-35.  As
> the Supreme Court instructed in Iqbal, "[w]here the
> well-pleaded facts do not permit the court to infer
> more than the mere possibility of misconduct, the
> complaint has alleged-but it has not 'show[n]'-'that

6

> the pleader is entitled to relief.'" Iqbal, [129 S.
> Ct. at 1949-50]. This "plausibility" determination will
> be "a context-specific task that requires the reviewing
> court to draw on its judicial experience and common
> sense." Id.

Fowler, 578 F.3d at 210-211.

This Court is mindful, however, that the sufficiency of this pro se pleading must be construed liberally in favor of Plaintiff, even after Iqbal. See Erickson v. Pardus, 551 U.S. 89 (2007). Moreover, a court should not dismiss a complaint with prejudice for failure to state a claim without granting leave to amend, unless it finds bad faith, undue delay, prejudice or futility. See Grayson v. Mayview State Hosp., 293 F.3d 103, 110-111 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 117 (3d Cir. 2000).

**B.    SECTION 1983 ACTIONS**

Plaintiff brings this action pursuant to 42 U.S.C. § 1983. Section 1983 provides in relevant part:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any State
> or Territory ... subjects, or causes to be subjected,
> any citizen of the United States or other person within
> the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other
> proper proceeding for redress....

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the

alleged deprivation was committed or caused by a person acting under color of state law.  See West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

**C.   PLAINTIFF'S CLAIMS**

1.   Transfer to Prison Facility Claim

The principal claim asserted in Plaintiff's complaint is that his transfer to a prison facility, as a civilly-committed person, is unconstitutional.

In Kansas v. Hendricks, 521 U.S. 346 (1997), the Supreme Court of the United States examined the conditions of confinement provided by Kansas' Sexually Violent Predator Act.  The Act called for the confinement of sexually violent predators in a secure facility because they were dangerous to the community. See id., 521 U.S. at 363-64.  Pertinent here, the Supreme Court was aware that the sexually violent predators in Kansas were to be held in a segregated unit within the prison system.  However, the Court noted that the conditions within the unit were essentially the same as conditions for other involuntarily committed persons in mental hospitals.  Moreover, confinement under the Act was not necessarily indefinite in duration, and the Act provided for treatment. See id., 521 U.S. at 363, 364, 365-368.  Thus, the Supreme Court held that involuntary confinement under Kansas' SVPA was not unconstitutional so long

8

as such civilly-confined persons are segregated from the general prison population and afforded the same status as others who have been civilly committed.  See id., 521 U.S. at 368-69.  See also Seling v. Young, 531 U.S. 250, 261-62 (2001) (holding same with respect to the State of Washington's SVPA).

Here, the New Jersey SVPA is essentially the same as the Kansas and Washington SVP statutes that were examined and upheld as constitutional by the Supreme Court in Hendricks and Seling, respectively.[2]  See Bagarozy v. Goodwin, Civil Action No. 08-468(SRC), 2008 WL 4416455, *7-8 (D.N.J. Sept. 23, 2008); In re Commitment of W.Z., 173 N.J. 109, 801 A.2d 205, 211 (2002).  Therefore, this Court finds that Plaintiff's transfer from the Kearny facility to a segregated unit in the East Jersey State Prison does not, in and of itself, violate the Due Process Clause.  Accordingly, the claim that Plaintiff's transfer to a segregated unit within a prison facility is unconstitutional will be dismissed for failure to state a cognizable claim of a constitutional deprivation.

---

[2]  Recently, the Supreme Court held constitutional under the Necessary and Proper Clause, a federal statute that allowed a district court to order the civil commitment of a sexually dangerous federal prisoner beyond the date the prisoner would otherwise be released.  See United States v. Comstock, 130 S. Ct. 1949 (2010).  Although these civilly committed persons remained confined at a federal prison, namely, FCI Butner, the Court did not address their place of civil confinement as being unconstitutional.

2.  <u>Conditions of Confinement Claim</u>

Although Plaintiff's transfer to a segregated unit within a prison facility is not, in and of itself, a constitutional violation, Plaintiff makes additional allegations concerning the conditions of confinement at the EJSP facility.

Generally, the Fourteenth Amendment requires that civilly committed persons not be subjected to conditions that amount to punishment, <u>Bell v. Wolfish</u>, 441 U.S. 520, 536 (1979)[3] within the bounds of professional discretion, <u>Youngberg</u>, 457 U.S. at 321-22. Specifically, in <u>Youngberg</u>, the Supreme Court held that civilly committed persons do have constitutionally protected interests, but that these rights must be balanced against the reasons put forth by the State for restricting their liberties.  <u>See</u> <u>id.</u> at 307.  The Constitution is not concerned with <u>de</u> <u>minimis</u> restrictions on patients' liberties.  <u>See</u> <u>id.</u> at 320.  Moreover, "due process requires that the conditions and duration of confinement [for civilly confined persons] bear some reasonable relation to the purpose for which persons are committed." <u>Seling</u>, 531 U.S. at 265.  While the nature of an SVP's confinement may factor in this balance of what is reasonable, it

---

[3] In <u>Bell v. Wolfish</u>, the Supreme Court held that whether a condition of confinement of pretrial detainees violated their constitutional rights turns on whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate government purpose.  441 U.S. 520, 535-39, (1979).

is clearly established that the substantive due process protections of the Fourteenth Amendment apply to SVPs.  See Andrews v. Neer, 253 F.3d 1052, 1061 (8th Cir. 2001) (applying the Fourteenth Amendment's "objective reasonableness" standard to excessive force claims brought by civilly committed SVPs).

The Third Circuit has held that placement of a civilly committed SVP in segregated confinement does not violate due process unless the deprivation of liberty is in some way extreme. See Deavers v. Santiago, 243 Fed. Appx. 719, 721 (3d Cir. 2007) (applying Sandin v. Conner, 515 U.S. 472 (1995)[4] to segregated confinement of civilly committed SVPs). See also Thielman v. Leean, 282 F.3d 478 (7th Cir. 2002) (likewise extending Sandin to civil commitment settings).  As pled, Plaintiff's complaints about the restrictions on his confinement are minimal. Consequently, this Court finds that Plaintiff has failed to state a cognizable claim at this time.

Plaintiff also alleges unsanitary or unhealthy conditions of confinement, namely, that there is poor air circulation and water quality, and that the ceilings leak when it rains. Certainly, these conditions bear no reasonable relation to the purpose for

---

[4]   In Sandin, the Supreme Court held that there was no cognizable liberty interest in freedom from additional restraint in a prison setting.  See Sandin, 515 U.S. at 486 ("We hold that [the prisoner's] discipline in segregated confinement did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest.").

which Plaintiff is committed, and to the extent these
uninhabitable living conditions are not addressed with the
renovations, Plaintiff may have a viable Fourteenth Amendment
conditions of confinement claim.

Nevertheless, this Court is guided by the Third Circuit's
determination in the context of a Fourteenth Amendment claim, as
set forth in Hubbard v. Taylor, 538 F.3d 229 (3d Cir. 2008)
("Hubbard II" ).  In Hubbard II, the Third Circuit held that
requiring pretrial detainees (claims by pretrial detainees, like
civilly committed persons, are governed by the Fourteenth
Amendment) to sleep on a mattress on the floor in a cell holding
three inmates for three to seven months did not constitute
punishment in violation of the Fourteenth Amendment.  538 F.3d at
234-35.  The court rejected the Second Circuit's per se ban on
the practice in Lareau v. Manson, 651 F.2d 96 (2d Cir. 1981), and
instead considered it "as part of the 'totality of the
circumstances within [the] institution.'"  Hubbard II, 538 F.3d
at 235 (quoting Hubbard v. Taylor, 399 F.3d 150, 160 (3d Cir.
2005) ("Hubbard I")).  The court then concluded that although the
plaintiffs "did spend a substantial amount of time on floor
mattresses," they had access to large day rooms and the record
did not substantiate plaintiffs' claims that the use of floor
mattresses caused disease or led to the splashing of human waste
on the plaintiffs.  See id.  After noting the efforts made by the

jail to improve conditions, the court found "that Plaintiffs were
not subjected to genuine privations and hardship over an extended
period of time for purposes of their due process claim."  Id.

Based on the allegations in Plaintiff's complaint, this
Court finds that Plaintiff's allegations concerning the "totality
of circumstances" surrounding his confinement are not sufficient
at this time to suggest that he has been "subjected to genuine
privations and hardship over an extended period of time for
purposes of [his] due process claim."  See Hubbard II, 538 F.3d
at 235.  Therefore, the Court will dismiss the conditions of
confinement claims, without prejudice, for failure to state a
claim at this time.  To the extent that the pleading deficiencies
can be cured, Plaintiff may move to reopen this case and file an
amended pleading in accordance with the attached Order.

3.   Deprivation of Property Claim

Liberally construing the complaint, Plaintiff claims that he
has been deprived of his personal property in violation of his
constitutional rights.  Plaintiff does not specify details of any
such deprivation, just generally states that his personal
property was confiscated after a "shake down" in the Ad Seg unit.
(Complt., ¶ 4(g)).

Plaintiff has not pled sufficient facts to permit this Court
to allow this claim to proceed under Iqbal.  However, the Court
notes that property loss caused by the intentional acts of

13

government officials does not give rise to a procedural due process claim under § 1983 where a post-deprivation remedy satisfying minimum procedural due process requirements is available under state law. See Parratt v. Taylor, 451 U.S. 527 (1981) (overruled in part on other grounds by Daniels v. Williams, 474 U.S. 327 (1986)); see also Zinermon v. Burch, 494 U.S. 113, 115 (1990); Hudson v. Palmer, 468 U.S. 517 (1984).  The New Jersey Tort Claims Act ("NJTCA"), N.J. STAT. ANN. § 59:1-1 et seq., provides a post-deprivation judicial remedy to persons who believe they were deprived of property at the hands of the State or local government.  See Holman, 712 F.2d at 857; Asquith v. Volunteers of America, 1 F. Supp.2d 405, 419 (D.N.J.1998), aff'd 186 F.3d 407 (3d Cir. 1999).

Therefore, any deprivation of property claim asserted by Plaintiff will be dismissed, without prejudice, for failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

4.   Interruption of Treatment Claim

Finally, Plaintiff asserts that therapy/treatment sessions have been denied because of the transfer to EJSP.  He contends that he has been denied the right to adequate treatment and reasonable care applicable to civilly-committed person, in violation of the Fourteenth Amendment.

The Supreme Court established that there exists a constitutionally protected right of mentally retarded persons

confined at a state institution to minimally adequate treatment. Specifically, the Supreme Court held that there is a constitutional right of mentally disabled persons confined at a state institution to "minimally adequate habilitation", self-care treatment or training to the extent necessary to protect their recognized fundamental rights to safety and freedom from physical restraints.  See Youngberg, 457 U.S. at 316, 319 and 322.

The Supreme Court further held that, where a fundamental right is at issue, a district court must balance "the liberty of the individual and the demands of an organized society" to determine whether such right has been violated.  See Youngberg, 457 U.S. at 320.  Although restrictions burdening a fundamental right generally receive strict scrutiny, in Youngberg, the Supreme Court found that this sort of rigorous analysis would unduly burden the ability of states, specifically their professional employees, to administer mental health institutions. Id. at 322.  Consequently, the Court concluded that "the Constitution only requires that the courts make certain that professional judgment was in fact exercised," because "[i]t is not appropriate for the courts to specify which of several professionally acceptable choices should have been made."  Id. at 321 (internal quotation and citation omitted).  Thus, a decision, "if made by a professional, is presumptively valid; liability may be imposed only when the decision by the professional is such a

15

substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such judgment." Id. at 323.

    In Leamer v. Fauver, 288 F.3d 532 (3d Cir. 2002), the United States Court of Appeals for the Third Circuit held that New Jersey's unique former statutory scheme for sex offenders that predicated the term of sentence on a prisoner's response to treatment and created a right to treatment created a fundamental and cognizable liberty interest in treatment, for purposes of both procedural and substantive due process analyses.  288 F.3d at 545.  The sentencing court had classified Leamer as having a "mental aberration" and in need of "specialized treatment," which automatically subjected Leamer to the maximum incarceration permitted by law unless he is cured prior to that point.  Leamer could not reduce his sentence through good behavior credits, parole policies or other credits.  Instead, he could only shorten his incarceration through successful therapy, which was an "inherent and integral element" of the statutory scheme. Consequently, the Third Circuit found that deprivation of treatment would be a grievous loss not emanating from the sentence.  See Leamer, 288 F.3d at 544.

    Apart from that recognized in Youngberg to prevent the violation of recognized fundamental rights to safety and freedom

16

from physical restraints, this Court finds the Third Circuit's holding in <u>Leamer</u> to clearly extend to an involuntarily committed sex offender under New Jersey's SVPA.  Like <u>Leamer</u>, the length of Plaintiff's confinement under the SVPA is predicated on his response to treatment.  Indeed, the provisions of the SVPA explicitly recognize New Jersey's obligation to provide treatment to SVPs for their eventual release based on successful therapy. <u>See</u> N.J.S.A. 30:4-27.32(a) ("If the court finds by clear and convincing evidence that the person needs continued involuntary commitment as a sexually violent predator, it shall issue an order authorizing the involuntary commitment of the person to a facility designated for the custody, care and treatment of sexually violent predators") (emphasis added); N.J.S.A. 30:4-34(b) ("The Division of Mental Health Services in the Department of Human Services shall provide or arrange for treatment for a person committed pursuant to this act. Such treatment shall be appropriately tailored to address the specific needs of sexually violent predators."); N.J.S.A. 30:4-27.36(a) (At any time during the involuntary commitment of a person under this act, if the person's treatment team determines that the person's mental condition has so changed that the person is not likely to engage in acts of sexual violence if released, the treatment team shall recommend that the Department of Human Services authorize the person to petition the court for discharge

17

from involuntary commitment status"); see also Kansas v. Hendricks, 521 U.S. 346, 367 (1997) (concluding from similarly-worded provisions of Kansas SVP Act that "the State has a statutory obligation to provide 'care and treatment for [persons adjudged sexually dangerous] designed to effect recovery ....'") (alterations in original) (internal citations omitted)).

Therefore, based on Youngberg and Leamer, this Court concludes that Plaintiff's liberty interest in treatment is fundamental and cognizable for purposes of both procedural and substantive due process analyses. Nevertheless, while this Court recognizes that Plaintiff has a fundamental and cognizable liberty interest in treatment, based on the allegations and admissions by Plaintiff in his Complaint, this Court also determines that there has been no procedural or substantive due process violations at this time.

With respect to Plaintiff's right to procedural due process, there does not appear to be any basis to Plaintiff's claim that there has been a categorical denial of therapy due to his transfer to EJSP's administrative segregation unit. Plaintiff states that group sessions have been canceled, but does not plead that he has been denied other therapy since his arrival at EJSP.

Accordingly, Plaintiff's claim alleging inadequate treatment will be dismissed without prejudice for failure to state a cognizable claim of a deprivation of a constitutional right at

18

this time.  Plaintiff may file a motion to amend his complaint if he can plead sufficient facts to show, under <u>Iqbal</u>, that he is being denied treatment.

### CONCLUSION

For the reasons set forth above, Plaintiff's complaint will be dismissed without prejudice, in its entirety as against all named defendants, for failure to state a claim at this time, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  Plaintiff may file a motion to reopen this case and to file an amended pleading to cure the deficiencies noted herein.  An appropriate order follows.


s/Susan D. Wigenton
SUSAN D. WIGENTON
United States District Judge

Dated: August 15, 2011

19